## Case No. 14,345.

### The UNION.

[2 Biss. 18.[1] 2 Chi. Leg. News, 121.]

Circuit Court, N. D. Illinois. June, 1868.

MARITIME TORTS—REMOTE DAMAGES.

The libellant had left his tug and taken refuge in another at the time of a collision, and was injured in regaining his tug. *Held*, the collision was the remote, not the proximate, cause of the injuries to libellant, and he cannot recover.

[Cited in Cardwell v. Republic Fire Ins. Co., Case No. 2,396; The Nereus, 23 Fed. 457.]

[Appeal from the district court of the United States for the Northern district of Illinois.]

This was a libel filed by Peter Nolan, one of the crew of the tug Dole, for damages caused by the crushing of his leg at the time of a contact between the tugs Dole and Union, he claiming that it was on account of the negligence of the latter tug.

The facts appear in the opinion.

Bates & Towsley, for libellant.

Waite & Clarke, for respondent, cited in support of the position that the damages were too remote to be recovered: Pearson v. Duane, 4 Wall. [71 U. S.] 605; Insurance Co. v. Tweed, 7 Wall. [74 U. S.] 50; Milton v. Hudson River Steamboat Co., 37 N. Y. 210; Miller v. Trustees of Mariners' Church, 7 Greenl. 51; Shannon v. Comstock, 21 Wend. 457; Clark v. Marsiglia, 1 Denio, 317; Spencer v. Halstead, Id. 606; Loker v. Damon, 17 Pick. 284; Ryan v. New York Cent. R. Co., 35 N. Y. 210; Waite v. Gilbert, 10 Cush.

177; Hill. Torts, 424; Denny v. New York Cent. R., 13 Gray, 484.

## Case No. 14,346.

### The UNION.

[4 Blatchf. 90.][1]

Circuit Court, S. D. New York. Sept. 15, 1857.

PRACTICE IN ADMIRALTY — DISCHARGE ON STIPULATION—SALE—RIGHTS OF PURCHASER—ORDER FOR REDELIVERY—MISTAKE AND FRAUD.

1. Where, in a suit in rem against a vessel, after she had been discharged on a stipulation for costs and value, the latter in $4,000, the amount claimed in the libel, the libel was amended by claiming $8,000, and subsequently a decree was entered in favor of the libellant, for $7,834.75, with interest, with a provision that the stipula-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

tors pay into the registry the amount of the stipulation, and afterwards the district court made an order that the claimant redeliver the vessel to the marshal, but that, it being represented that she was beyond his control, he pay into the registry $10,000, part of the purchase money of the vessel on her sale by him subsequently to her discharge, and that that be taken as a sufficient compliance with the order to redeliver. *held*, on appeal, that the order for the redelivery of the vessel, or the payment of the $10,000 into the registry, was erroneous.

[Cited in The Wanata, 95 U. S. 605.]

2. The vessel, after being so discharged, returned into the hands of her owner subject to all previously existing liens or charges, the same as before her seizure, except that on account of which she was seized; and she was also subject to any subsequently accruing liens or charges in the hands of her owner, or in the hands of any person to whom she might be transferred.

[Cited in The Thales, Case No. 13,855; The Old Concord, Id. 10,482; The William F. McRae, 23 Fed. 558.]

3. A redelivery of the vessel would be one subject to all these existing or subsequently accruing liens, and also to the rights of any bona fide purchaser, in case of a sale of her in the meantime.

[Cited in U. S. v. Mackey, Case No. 15,696.]

4. In this case, the vessel had, after her discharge, been sold and passed into the hands of her purchaser; and his title was undoubted.

5. In case of any mistake or fraud committed in entering into the stipulation, and of the improvident discharge of the vessel, it would be competent for the court to relieve the parties concerned, on an application within a reasonable time, by ordering the vessel back into the custody of the officer.

[Cited in The White Squall, Case No. 17,570; The Jack Jewett, Id. 7,121; The Favorite, Id. 4,698; Roberts v. The Huntsville, Id. 11,904; U. S. v. Ames, 99 U. S. 42; The Two Marys, Case No. 14,300; The H. F. Dimock, 52 Fed. 600; The Haytian Republic, 8 C. C. A. 182, 59 Fed. 478; The Haytian Republic, 154 U. S. 126, 14 Sup. Ct. 994.]

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, by the owners of the ship Charles, against the steamship Union, for a collision, which occurred off Cape Hatteras, on the 3d of February, 1854. The libel claimed $4,000 damages. The owners of the Union appeared as claimants, to defend, and two of them, Spofford and Tileston, entered into the usual stipulation for costs and the value of the vessel, the latter to the extent of $4,000, the damages claimed in the libel, upon which the vessel was discharged from the arrest, by an order of the court, on the 7th of March, 1854, and passed into the hands of her owners. On the 27th of May following, the libellants amended the libel, claiming eight thousand instead of four thousand dollars damages. On the 13th of April, 1855, the district court entered an interlocutory decree in favor of the libellants, which was general in its terms, condemning the steamship Union in the amount of the damages sustained by the collision in the pleadings mentioned, and referring the case to a

commissioner to ascertain and compute the amount. A great deal of evidence was taken before this officer, upon the question, and, on the 19th of May, 1856, he reported the amount at $7,834.75, with interest. Exceptions were taken to the report, but they were overruled, and a final decree was entered on the 10th of June, 1856, for the amount reported. That decree further provided, that unless an appeal should be taken from the decree, the stipulators should pay into the registry the amount of the stipulation for costs and value, and the clerk should distribute the proceeds. On the 3d of December, 1856, a motion was made in the district court, on behalf of the libellants, that the claimants bring the ship or her proceeds into court, or that, in default thereof, the stipulation be increased, and a decree of the court be entered thereon, for the full amount of the damages decreed. The claimants opposed that motion, and read an affidavit showing that, after the vessel was discharged from the arrest on the stipulation, and about the middle of March, 1856, she sailed for Europe, and was delivered to a company who had purchased her, and that the claimants had had no interest in her since. On the 20th of December, 1856, the district court ordered that the claimants redeliver to the marshal the vessel, that she might be taken to satisfy the decree rendered in the cause, but that, it being represented that she was beyond their control, the claimants pay into the registry the sum of ten thousand dollars, a part of the purchase money of the ship, and that the same be taken as a sufficient compliance with the order to redeliver. The claimants then appealed to this court.

Edwin W. Stoughton and Daniel D. Lord, for libellants.

Francis B. Cutting, for claimants.

NELSON, Circuit Justice. Upon the proofs, I am satisfied that the decree of the court below in favor of the libellants was correct and should be affirmed. The questions presented on the appeal relate more particularly to the amount of damages. It is to be observed, in the first place, that this is a proceeding in rem, the owners appearing to defend, as claimants, on entering into the usual stipulation. Therefore, no decree can be rendered personally against them, except as stipulators in the suit; and, of course, only to the amount provided for in their stipulation. Hence, the decree in this case, so far as it affects the owners personally, is properly limited to that amount, and, also, to the two owners, Spofford and Tileston, who were the only parties to the stipulation. In other words, the decree as against them is for the $4,000 and costs.

The question, therefore, as to any further liability, turns upon the validity of the subsequent order to redeliver the vessel into

the custody of the marshal, or, in default thereof, to pay into the registry the sum of $10,000. This order assumes that the discharge of the vessel from the seizure, and her delivery to her owners, was not absolute, but that she is still subject to the exertion of the power of the court for the purpose of satisfying any decree. No case has been furnished in which this power of the admiralty has been exerted; and, on principle, I do not well see how it can be maintained. The vessel, after being discharged from the arrest upon the giving of the bond or stipulation, returns into the hands of her owner, subject to all previously existing liens or charges, the same as before the seizure, except as respects that on account of which the seizure was made. She is also subject to any subsequently accruing liens or charges in the hands of her owner, or in the hands of any person to whom she may have been transferred. The redelivery, therefore, of the vessel, if permitted, or enforced, must necessarily be a redelivery subject to all these existing or subsequently accruing liens, and, also, to the rights of any bona fide purchasers, if a sale has in the meantime taken place. The complication and embarrassment growing out of the exercise of the power, if sanctioned, are apparent, and this, doubtless, accounts for the absence of any precedent in the books. In the present case the vessel has been sold, and has passed into the hands of the purchaser, and his title is, I think, undoubted. It is so for the reason that, on the discharge of the vessel, on the giving of the bond or stipulation, she is thereby discharged from the lien or incumbrance which constituted the foundation of the proceeding against her, the security taken being the substitute for the vessel.

This view is strengthened by the provisions of the act of March 3, 1847 (9 Stat. 181), which provides that, in case of a warrant against the vessel, or other process in rem, it shall be the duty of the marshal to stay the execution of the process, or to discharge the property arrested, if the same has been levied on, on receiving from the claimant a bond or stipulation in double the amount claimed by the libellant, &c. According to the terms of the act, the tender of the proper security in time would seem to prevent even the arrest of the vessel, and, of course, in such a case there could be no claim to a redelivery.

I agree, that if there has been any mistake or fraud committed in entering into the stipulation, and the vessel has been improvidently discharged, it would be competent for the court to relieve the parties concerned, on an application, within a reasonable time, by ordering the vessel back into the custody of the officer. But that is wholly a different question from the one now under discussion.

Then as to that part of the decree or order which requires the claimant to pay in a por-

tion of the purchase money. If the vessel is not subject to the exercise of this power of the court, to be redelivered into the custody of the marshal, to be applied to the payment of the damages, it follows that the proceeds of a sale are not. They cannot, in this respect, be distinguished from the vessel herself.

I must, therefore, reverse the decree or order directing the redelivery of the vessel, or the payment of the $10,000 into the registry, and affirm the decree against the stipulators.