## Case No. 14,049.

### The TILLIE.

[13 Blatchf. 514.] 1

Circuit Court, E. D. New York. Aug. 16, 1876. 2

ESTOPPEL—HUSBAND AND WIFE—COLLISION—LOOKOUT—LIGHTS.

1. A canal-boat, wholly owned by a married woman, was injured in a collision with a steamtug. Her husband filed a libel in rem, in his own name, as owner, against the tug, to recover the damages sustained. At the time of the collision, and thereafter, the libellant and his wife resided in New York. On the trial, the wife testified as a witness for the libellant, and gave material evidence to sustain his claim for damages. It was shown that, in fact, the action was brought by and with the assent of the wife: Held, that the wife would be equitably estopped from bringing another suit, and that this suit could be maintained.
[Cited in The William F. McRae, 23 Fed. 560.]

2. A tug with her captain on deck, and a man at her wheel, and no other lookout, held not to have had a proper lookout.
[Cited in Cianciminos Tow & Transp. Co. v. The Ripple, 41 Fed. 64.]

3. The absence of lights on a canal-boat held unimportant, when she could have been seen without lights on her, and when there was so much daylight that lights on her would not have afforded any aid in discovering her.
[Cited in The City of Troy, Case No. 2,769; The Buckeye, 9 Fed. 667.]

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
2 [Affirming Case No. 14,048.]

[Appeal from the district court of the United States for the Eastern district of New York.]

In admiralty.

Beebe, Wilcox & Hobbs, for libellant.
James K. Hill, for claimant.

HUNT, Circuit Justice. On the evening of March 24th, 1873, the canal-boat John H. Stim, while being towed by the steamer U. S. Grant through Long Island Sound, in an easterly direction, was run into and injured by the steam propeller Tillie. At the time of such injury the boat John H. Stim was the exclusive property of Catharine Madden, wife of the libellant; and the libellant had no ownership or interest in said vessel at the time of said injury, or at the time of commencing this action. At such time, the libellant and his wife were, and ever since have been, residents of the state of New York. The said Catharine testified as a witness on the trial of the action, being called by her husband, and giving material evidence to sustain his claim for damages. The tow of the U. S. Grant consisted of nine boats, in three tiers, of three boats each, and the John H. Stim was the outside boat on the port side of the second tier. She was in that position when she was run into by the Tillie, and such collision occurred at about twenty minutes after six o'clock p. m., and when the light and the weather were such that the Stim and the other boats in the tow could have been seen by the officers of the Tillie, if a good lookout had been kept, and ought to have been seen by those in charge of her. The sun set at six o'clock and eleven minutes. The boats were not seen by the captain or lookout of the Tillie until that vessel was directly upon them. She ran between two of the boats in the stern tier, and against the boats in the second tier. The Tillie had no other lookouts than the man at the wheel, and the captain, who was in the fore part of the vessel, attending to the navigation of the vessel and giving orders for the same. The man at the wheel shifted the wheel and handled the engine, by the captain's orders. The pilot was in the cabin, drinking a cup of coffee, when the collision occurred. The Tillie was running at a speed of eight knots to the hour, and, when running at that speed, could have been brought to a dead standstill, by means of her reverse engines in less than her length.

I have, throughout the examination of this case, entertained great doubt of the right of the libellant to maintain this action. He brings the suit in his own name, alleging himself to be the owner of the boat injured, and claiming the damages as his own. He does not sue as husband for the use of his wife, as master for the use of the owner, or as agent or representative of any one. He appears in his own behalf only, and for his own benefit. The general rule cannot be doubted, that the owner of the claim present-

ed must be the party to the suit for its recovery. ·If the chattel· of A. is injured or destroyed, A. must bring the suit to recover the damages resulting; and an action by B. must necessarily result in a failure. This is the rule in all courts. The fact that one is an agent of the owner, upon principle, can ·give ·him no more interest in the property, and no greater right to sue in his own name, as owner, for an injury to it, than if he were not an agent. By the laws of the state of New York, the bill of sale given in evidence established the title of this vessel in Catharine Madden, the wife of the libellant, and, by the same laws, she is entitled to bring an action in her own name for an injury to it.

It is laid down, in the case of The Una [Case No. 14,331] that the master of a vessel, whose owners are foreigners and absent. from the country, may bring a ·suit in his own name, to recover the damages resulting from a collision. Whether justly or not, stress is laid upon the fact that the vessel and her owners were foreign and absent. In the case before us, this circumstance does not exist. The master and the owner are both residents of the state of New York.

Three cases have been decided in the supreme court of the United States, viz.: Houseman v. The North Carolina, 15 Pet. [40 U. S.] 40; Lawrence v. Minturn, 17 How. [58 U. S.] 100, and McKinlay v. Morrish, 21 How. [62 U. S.] 343, which are supposed to bear upon this point. In the latter two cases, the action was by the consignees, in their own name, and the question turned upon the interest of the consignees in the cargo, and it was held that this interest gave a right of action. In the case in Peters, the action of the agent was ratified by the power of attorney of the consignees, for whom he sued. The case of The Commander in Chief, 1 Wall. [68 U. S.] 43, holds, that the objection of want of proper parties, viz.: that the owners of the vessel were not the owners of the cargo, and cannot sustain the libel, cannot be taken for the first time, upon the argument in the supreme court. In the case of The Ilos, Swab. 100, where the damage had been pronounced for, in a suit by A., and, on reference to assess damages, it appeared that B., not A., was the registered owner of the vessel injured, and A. claimed to be the beneficial owner, by a bill of sale not registered, Dr. Lushington ordered the case to proceed, and the money to be paid into the registry for the benefit of the party entitled to it. The objection was not taken on the trial, nor did the fact then or ·there appear. The order was made upon a motion to dismiss. arising subsequent to the decision upon the merits. The case scarcely affords ground to determine what would have been the opinion of the learned judge, had the question arisen in· the course of the trial and upon issue made. These authorities do not leave the question of the libellant's right to sue in this case in as good

a position as might be desired. It is clear, in fact, however, that this action is brought by and with the assent of the wife, the real owner. I think it would not be tolerated in the real owner of a claim, that he should sit by and see another prosecute for its recovery, and even aid in such recovery by his own testimony in this suit, and then bring his own action to recover the same demand. He would be equitably estopped. I, therefore, proceed to consider the case upon its merits.

The evidence satisfies me that the collision occurred at about twenty minutes past six o'clock, on the 24th of March, 1873, at about ten minutes after sundown. The claimant's witnesses generally place this time at twenty minutes before seven. I think this is an error. It certainly is, unless the libellant's witnesses are guilty of the grossest perjury, in general not only, but in the specific facts to which they testify. The son of the captain of the Tillie, a witness for the claimant, testifies that he could see the land as they passed Fort ·Schuyler and Throgg's Neck, corroborating the numerous witnesses to that fact, on the part of the libellant. I have no doubt, that, if reasonable care had been exercised by those on board of the Tillie, the tow of boats could have been readily seen and avoided.

The Sound was a mile wide at this point, and the passage to the north of the Grant and her tow was unobstructed. There was no proper lookout on the Tillie, in form or in fact. The captain, who attends to the navigation of the vessel, is held not to be a proper lookout. A lookout should give his entire and undivided attention to ascertaining the vessels in front of, or near to, his own vessel, and reporting the same. The· master, who is charged with the general care· of a vessel. and gives his attention to that duty. is not, and cannot come, within this description. Neither is the man at the wheel—whose duty it is to keep the vessel on a prescribed course, to do which he must keep his eye on ·the compass. and receive and obey orders—a competent lookout, within this rule. Especially is this so. if, as in this case. he is charged with the duty of signalling to the engineer the directions necessary to be given to him. These two persons constituted the only lookout on the Tillie, as she proceeded up the Sound on the night in question. I think the lookout was not sufficient in law; and, in fact, I think they did not exercise the care that the occasion required.

The testimony afforded by a log-book is usually entitled to much respect. The logbook of the Tillie, offered in evidence, is surrounded by so much doubt, and, to use a mild term, so many mistakes and discrepancies in relation to it are presented, and its internal appearance is so suspicious, that it.must be entirely rejected.

The absence ·of· lights on the canal-boat

is not important. The evidence is quite satisfactory, that, if reasonable attention had been given, the boats in the tow could have been seen without lights on them; and that such was the condition of the daylight, that lights would not have afforded any aid in discerning them. They were plainly visible from the Grant, at a distance of about six hundred feet; and the boats of another tow were also visible at the distance of a mile, as was the land on each side; and one witness was reading by the remaining daylight. Lighted lamps are not important for good or for evil, when the daylight remains so strong as in the present case. No claim is made, in the answer, that the lights of the Grant were defective or insufficient.

I find nothing in the evidence which would justify me in holding that the negligence of the Tillie and her officers is affected by any negligence of the Grant or the canal-boat injured.

The judgment of the district court should be affirmed.