## The William F. McRae.

*(District Court, E. D. Michigan.* January 26, 1885.)

ADMIRALTY PRACTICE—LIBEL FOR COLLISION—DISMISSAL—SUBSEQUENT LIBEL BY WIFE CLAIMING AS OWNER OF VESSEL.

A. B., averring himself to be the owner of a vessel injured by collision, filed a libel against the offending vessel. This libel was subsequently dismissed by reason of his failure to give security for costs. While his suit was still pending, his wife, appearing by the same proctors, and averring herself to be the owner of the injured vessel, filed another independent libel for the same collision, and caused the offending vessel to be arrested a second time. *Held*, that the wife should have made herself a party to her husband's suit, and that her libel should be dismissed.

In Admiralty.

This was a libel for a collision, promoted by Elizabeth McClure, who was averred to be the owner of the scow Frank Morris, the injured vessel. The case was submitted to the court informally upon the sufficiency of the following averment in the answer:

"(5) Respondent, further answering, says that on the sixth day of October, A. D. 1883, a libel was filed in this court by one George McClure, who is reputed to be the husband of the libelant herein, against the said tug William F. McRae, etc., for the same cause of action, as will more fully appear by an inspection of said libel; that said tug William F. McRae was arrested in said suit, and subsequently was duly released on a good and sufficient bond given, in due form, for the sum of $4,940, and that thereby the said tug was forever discharged from said cause of action, so that this suit cannot now be maintained against her."

*James J. Atkinson,* for libelant.

*J. W. Finney,* for claimant.

BROWN, J.    That a vessel discharged from arrest upon admiralty process by the giving of a bond or stipulation for her value, or for the payment of the amount claimed in the libel, returns to her owner freed forever from the lien upon which she was arrested, and can never be seized again for the same cause of action, even by the consent of parties, is a proposition too firmly established to be open to question. *The Kalamazoo,* 9 Eng. Law & Eq. 557; *The Wild Ranger,* Brown. & Lush. 84; *The Union,* 4 Blatchf. 90; *The White Squall,* 4 Blatchf. 103; *The Old Concord,* 1 Brown, Adm. 270; *The Josephine,* 4 Cent. Law J. 262.

The general principle is further illustrated in the case of *The Thales,* 3 Ben. 327.    In this case, a libel was filed against the bark Thales to recover a balance remaining due for certain repairs, etc. Subsequently, this suit was discontinued and the costs paid. Still later, another libel was filed by the same libelants for the same cause of action, and the vessel arrested and bonded a second time.    It was insisted that the discontinuance of the former suit, with the consent of the claimants therein, and the payment of the costs, which had been accepted by them, operated to make the arrest of the vessel in the second suit an original arrest, and not a second arrest.    It was held, however, that the case fell within the principle of *The Union* and *The White Squall,* and that the court had no power, in the absence of fraud or mistake, to order her arrested a second time, and that the fact that the first suit was discontinued with the consent of the claimants indicated no intention, actual or in law, to subject the vessel to a second arrest, or to waive the rights in that respect which then belonged to them.    This case was affirmed by Judge WOODRUFF upon appeal to the circuit court.    10 Blatchf. 203.

There is occasionally, however, difficulty in determining whether the second arrest is for the same cause of action as the first.    Thus a libel by the owner of a ship for damages by collision would obviously be no bar to a second action by the owner of the cargo for damages suffered by him in the same collision, although it has been held, doubtless correctly, that if the ship-owner sues for damages both to the ship and cargo, as he may do under the practice of the admiralty courts, the owner of the cargo cannot afterwards file a libel in his own name, but must petition to be made a co-libelant in the first suit.    *The Nahor* 9 FED. REP. 213.    In delivering the opinion in this case, Judge CHOATE remarked that "the vessel, having given bail for the value of the cargo in the first action, and the action being properly brought by the master and owners, as carriers, for the loss of the cargo, she was not liable to be again arrested for the same cause of action."

The rule, then, manifestly applies only to those cases wherein the libelant might have asserted his rights in the first action; and the real

question in this case is whether the libelant was not bound to appear in the suit begun by her husband, and ask to be made a co-libelant, or be substituted for him as sole libelant. Although it is not expressly averred in the answer in this case, it appears by the record of the former case that George McClure, the husband of the libelant, filed his libel for this collision October 6, 1883, averring himself to be the owner of the Frank Morris; and that his libel was dismissed April 7, 1884, for failure to file security for costs. Pending her husband's suit, and on the tenth of December, 1883, Elizabeth McClure, the present libelant, appearing by the same proctors, and claiming herself to be the owner of the injured vessel, filed her libel in the exact language of the first libel, except in respect to the allegation of ownership, and procured a second arrest of the vessel for the same collision. Under these circumstances, there can be no question that she had legal notice of the pendency of her husband's suit. Could she have been substituted in place of her husband as sole libelant in that suit? I should have had little hesitation in saying that she could, were it not for the opinion of Mr. Justice SWAYNE in the case of *The Detroit*, 1 Brown, Adm. 141.

This was a suit for towage services, begun in the name of *John K. Harrow*, who was supposed to be the owner of the tug. After answer filed, and the testimony of one witness had been taken, it was discovered that *James P.* Harrow was the owner of the tug at the time the services were performed. Upon an affidavit that the proctor had been misinformed at the time the suit was commenced, an amendment was permitted, substituting James P. for John K. Harrow as libelant. A motion to vacate the order permitting the amendment was afterwards made, and denied by the district court. On appeal to the circuit court it was held by the learned justice that there was no authority to make this order, and that the substitution of one sole libelant for another is substantially the institution of a new suit. This point was not decided in view of the contingency which has arisen here; and the general rule that a vessel once arrested and bonded is to be regarded as forever freed of that lien, appears to me to be so wholesome a one that I am unwilling to admit exceptions to it, unless in a very clear case. With the utmost respect for the learned justice who decided the case of *The Detroit*, I am constrained to say that I think the technical rule that one libelant can be substituted for another ought to give way to the general rule above stated, and to the still more equitable principle that where an action is substantially between two vessels, a mistake of the pleader as to the ownership or legal title of the injured vessel (a mistake which in actual practice is very likely to occur) ought to be corrected by an amendment. It was decided by the supreme court in *The Commander in Chief*, 1 Wall. 43, that new parties may be added, and parties improperly joined may, on motion, be stricken out. And in *Jennings* v. *Springs*, Bailey, Eq. 181, it was held to be within the discretion of

the court to permit a bill to be amended by substituting the name of a new for an original complainant, even after answer filed. Here the bill had been filed by an agent of the real complainant.

But whether libelant could have been substituted for her husband or not, I see no objection to her being joined as co-libelant, and to the court making such decree upon the final hearing as to the distribution of proceeds as the justice of the case might require. In the case of *The Tillie*, 13 Blatchf. 514, a canal-boat wholly owned by a married woman was injured in a collision with a steam-tug. Her husband filed a libel *in rem* in his own name, as owner, against the tug, to recover damages sustained. On the trial, the wife testified as a witness for her husband, and gave material evidence to sustain his claim for damages. It was shown that in fact the action was brought by and with the assent of the wife, and it was held that the wife would be equitably estopped from bringing another suit, and that the libel of the husband could be maintained. If, from the circumstances of this case, an equitable estoppel could be said to arise, *a fortiori*, would the wife be estopped if she appeared in her husband's suit and asked to be made a co-libelant with him.

While the operation of this rule may work a hardship to the libelant in this case, I do not see how, upon principle or authority, her suit can be sustained.