HAWGOOD & AVERY TRANSIT CO. v. DINGMAN et al.

BARRY TOWING & WRECKING CO. et al. v. INTER-OCEAN COAL & COKE CO. et al.

(Circuit Court of Appeals, Eighth Circuit.   May 9, 1899.)

Nos. 1,149, 1,150.

1. MARITIME LIEN—SUIT TO ENFORCE—EFFECT OF RELEASE ON BOND.
    A release to a claimant under an appraisal and stipulation or bond, not made under the limited liability act, of a part of the res seized under a libel in admiralty has the same effect upon the liens upon the part released that a discharge of the entire res under a like appraisal and stipulation or bond would have had upon the liens upon the whole thing, which

is to discharge the liens of those who were parties to the proceeding when the release was made, but no others.

**2. SAME—INCONSISTENT CLAIMS.**

An intervener in a suit to enforce liens against a vessel, who claims ownership of a part of the property libeled, and obtains its release on appraisal and bond, cannot, by subsequently setting up a claim to a lien in his own behalf, become entitled to share in the proceeds of the bond and the remaining property.

**3. SAME—NECESSITY OF CROSS LIBEL.**

Respondents in a suit to enforce maritime liens are required to file cross libels, to take out process, and have it served in the usual way, if they have liens which they wish to enforce, and cannot obtain such relief by merely pleading their claims in their answers.

Appeals from the District Court of the United States for the District of Minnesota.

These are appeals from two decrees in admiralty rendered in proceedings against the steamer Belle P. Cross. On December 14, 1896, Gustave Herman, Ralph E. Herman, and Edward G. Ashley filed a libel in the court below against this steamer, her engine, boilers, tackle, apparel, and furniture. This libel was in the usual form, except that it contained an allegation that, after the supplies on account of which it was filed had been furnished, the owner of the vessel had taken her engine, boilers, and machinery out of her hull, and had placed them in the steam tug G. A. Tomlinson. A monition issued on the libel, and the marshal arrested the hull of the Belle P. Cross, and also her engine, boilers, and machinery, which he found in the G. A. Tomlinson. On March 8, 1897, the appellant the Hawgood & Avery Transit Company petitioned the court for an appraisal of the engine, boilers, and machinery in the Tomlinson. An appraiser was appointed, and an appraisal thereof was made pursuant to a stipulation signed by the transit company, and all those who had then filed libels against the steamer Belle P. Cross or its engine, boilers, and machinery. This stipulation recited that it was made "for the purpose of fixing a value thereto, and to enable said property to be released under the provisions of rule 17 of this court and the statute in such case made and provided." The appraiser fixed the value of the engine, boilers, and machinery at $2,000. The transit company executed and filed a bond for this amount for the benefit of "whom it may concern," conditioned that if that company should abide by all the orders of the court, and pay the amount awarded by the final decree, the bond should be void. Upon the filing of this bond, and on March 10, 1897, the engine, boilers, and machinery were released and surrendered to the transit company pursuant to an order of the court to that effect. But the hull of the steamer Belle P. Cross remained in the possession of the marshal. After this release, and on April 3, 1897, the Inter-Ocean Coal & Coke Company filed an intervening libel against the Belle P. Cross and her boilers, engine, and machinery, and caused the engine, boilers, and machinery to be again arrested in the tug Tomlinson under a monition issued upon this libel. On September 4, 1897, the Barry Towing & Wrecking Company, which had succeeded to the title of the transit company, filed a claim for this engine, these boilers, and this machinery, and gave a bond in the sum of $2,329.66 to R. T. O'Connor, the marshal of the district, which recited the filing of the intervening libel and the seizure of the engine, boilers, and machinery thereunder, and was conditioned that the wrecking company should abide by and perform the decree of the court in relation to the claim of the coal and coke company. On September 11, 1895, the wrecking company filed an answer to the intervening libel, in which it set forth the prior proceedings, which we have detailed, alleged that it had bought the engine, boilers, and machinery for value, and without notice, on April 1, 1897, that it was the owner thereof, and that the release of March 10, 1897, discharged this property from all maritime liens. Meanwhile the hull of the steamer Belle P. Cross had been condemned and sold, and the proceeds of the sale, which were only $310,

had been paid into the registry of the court. Upon the final hearing the court below entered two decrees, one to the effect that the money in the registry of the court and the proceeds of the bond of the transit company of March 4, 1897, should be distributed among those who had filed their libels prior to March 10, 1897, and the other to the effect that N. J. Trodo, who had become the assignee of the coal and coke company, should have summary judgment for $1,333.53 and interest, the amount of that company's claim, against the Barry Towing & Wrecking Company and the sureties upon its bond of September 4, 1897. From these decrees the transit company and the wrecking company have appealed.

Harvey D. Goulder (F. E. Searle and H. R. Spencer, on the brief), for appellants.

Isaac N. Huntsberger and Roger M. Lee (John H. Norton and Francis W. Sullivan, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge (after stating the facts as above, delivered the opinion of the court.

The questions presented in this case turn upon the legal effect of the discharge of the engine, boilers, and machinery upon the appraisal and bond on March 10, 1897. If that discharge released this property from the maritime liens of those who had not then filed their libels in the court below, the decrees were erroneous; but if it left these liens unimpaired, and discharged the property from the liens of those who were then parties to the proceedings only, they were right. The theory of the appellants is that the bond of March 4, 1897, became a substitute for the engine, boilers, and machinery as to all who claimed maritime liens upon this property, whether they had presented their liens in the court below or not when the bond was given and the machinery was released. Upon this theory they insist that the court erred in refusing to include the Inter-Ocean Coal & Coke Company, or its assignee, and the Hawgood & Avery Transit Company, among the distributees of the proceeds of that bond, although neither of them had filed any libel against or pleaded any lien upon the machinery or the vessel when this bond was given, and they contend that the seizure of the machinery under the subsequent libel of the coal and coke company and the decree that the wrecking company and the sureties on its bond shall pay the claim of that company are erroneous, because, as they say, the machinery was discharged of all maritime liens by the substitution of the earlier bond in its place on March 10, 1897. When a ship which has been arrested under a libel is released upon an appraisal and a deposit, or a bond, or a stipulation, not given under the limited liability act, the deposit or bond or stipulation is substituted for the vessel as to all those who have then filed their libels and become parties to the proceeding, but as to no other parties. The proceeds of the deposit, bond, or stipulation inure to the benefit of those who were parties to the proceeding when the release was made. But they inure to the benefit of no others. The vessel is discharged from the liens of these parties, and from their liens only. Lienholders who have not filed their libels, and have not become parties to the proceeding when the ship is discharged, may not be permitted to share in the

proceeds of the deposit or bond or stipulation, and their liens are neither detached nor affected by the release. The vessel returns to the claimant subject to the maritime liens of all who were not parties to the proceeding before the discharge was made, and they may libel and arrest her to enforce their liens to the same extent and with the same effect as though she had never been seized before. Rev. St. §§ 940, 941; Adm. Rules, 11, 26; The Langdon Cheves, 2 Mason, 58, Fed. Cas. No. 8,063; The Union, 4 Blatchf. 90, Fed. Cas. No. 14,346; The Antelope, 1 Ben. 521, Fed. Cas. No. 481; The Haytian Republic, 57 Fed. 508, 509; Id., 154 U. S. 118, 14 Sup. Ct. 992; The Oregon, 158 U. S. 186, 15 Sup. Ct. 804. If the transit company in the case at bar had claimed both the hull and the machinery of the steamer, and had procured the appraisal and given the bond for the entire res, and the vessel and machinery had both been discharged thereunder, the right of the coal and coke company to subsequently libel her and to enforce its lien by seizure and sale of every part of the vessel and of the machinery could not have been successfully questioned under these authorities. The reason for this rule is that the maritime lien of that company had attached to every part of the ship and to every part of her machinery before any libel was filed against her, and the acts of third parties in seizing her and releasing her on an appraisal and bond could not affect the right and lien of this company in its absence, and without its consent. On this ground all the authorities are that, if the entire thing had been libeled and discharged here, the lien of the coal and coke company would have remained untouched. How, then, could a discharge of a part of this thing have a greater effect than the release of the whole? Every reason which tends to support the lien of the absent holder when the entire thing is discharged pleads with equal cogency for its maintenance when only a part is released. The lien attaches to every part as much as to the whole. If one-half, two-thirds, or any other portion of the res is destroyed, the maritime lien still adheres to the remnant that has escaped, and no persuasive reason occurs to us why it should not hold as firmly every part which has been released from a seizure made by strangers to pay their debts. Any other rule would permit the first libelants and the owner to destroy the value of the liens of all others by an appraisal and discharge of the valuable part of the thing seized, leaving, as in this case, nothing but a worthless remnant for their satisfaction. Every consideration of reason and of equity demands that the same rule should apply to a discharge of a part which governs the release of the whole. Our conclusion is that a release to a claimant under an appraisal and stipulation or bond, not made under the limited liability act, of a part of the res seized under a libel in admiralty, has the same effect upon the liens upon the part released that a discharge of the entire res under a like appraisal and stipulation or bond would have had upon the liens upon the whole thing. The result of this conclusion is that there was no error in the decrees of the court below. The coal and coke company was not entitled to share in the distribution of the proceeds of the bond given by the transit company on March 4, 1897, as the claimant of the engine, boilers, and machinery, because it had not

filed its libel when they were discharged under that bond. The transit company had no right to share in the proceeds of that bond as the assignee of the maritime lien of the Phenix Iron Works, because it had not filed any libel to enforce that lien, nor had it pleaded the same, or made any claim upon it in any way, when the engine, boilers, and machinery were discharged under that bond on March 10, 1897. The course of the transit company was this: It appeared on March 5, 1897, and filed a claim for the engine, boilers, and machinery, in which it alleged that it was the owner thereof. On March 6, 1897, it filed a petition for leave to intervene, in which it pleaded that it had an interest in the vessel by reason of a mortgage. But it was not until May 8, 1897, that it first presented to the court below the claim that it had a maritime lien which it had derived from the Phenix Iron Works. The engine, boilers, and machinery had then been discharged under the bond of March 4, 1897, and it was too late for the transit company to present a claim to share with the libelants who were parties to the cause on March 10, 1897, in the proceeds of a bond which they had secured for their own benefit. Not only this, but the transit company was prevented from asserting such a claim as against those libelants by the fact that it had induced them to accept its bond, and to return to it the engine, boilers, and machinery, by its silence regarding the maritime lien it now urges, and by its positive averment in its claim to the property that it was the owner of it. Chase v. Driver, 92 Fed. 780. Moreover, the transit company did not present its claim to enforce this maritime lien in a libel or a cross libel. It merely pleaded it in its answer. When the machinery was released by the order of March 10, 1897, it undoubtedly went back to this company, subject to all the maritime liens that had not been presented to the court below before the property was discharged. That company might have filed a libel or a cross libel, and it might have caused this machinery to be arrested upon the maritime lien it now presses. But it could not have acquired any right to enforce that lien, or to share in the distribution of the proceeds of the engine, boilers, and machinery, or in the proceeds of a bond or a stipulation taken for them by other parties, by simply setting it forth in its answer. Respondents in a libel suit are required to file a cross libel, to take out process, and have it served in the usual way, if they have maritime liens which they desire to enforce. Ward v. Chamberlain, 21 How. 572, 574. The coal and coke company pursued the proper and legal course to enforce its lien. After the machinery had been released from the liens of all the libelants who had appeared in court before March 10, 1897, it caused the engine, boilers, and machinery to be arrested upon a monition issued upon a libel against the ship and its machinery, which it filed subsequent to that date. The decree of the court below that its lien existed, and that the wrecking company and its sureties were liable upon the bond which they gave to abide by and perform the decree upon this libel, was in accordance with the rules and principles of law to which we have referred, and both the decrees below must be affirmed. It is so ordered.