**PATTERSON OIL TERMINALS, Inc. v. THE PORT COVINGTON et al. THE GIRARD POINT.**

No. 10965.

United States Court of Appeals Third Circuit.

Argued April 10, 1953.

Decided July 14, 1953.

Joseph W. Henderson and Rawle & Henderson, Philadelphia, Pa. (Harrison G. Kildare, Philadelphia, Pa., on the brief), for appellants.

Timothy J. Mahoney, Jr., and Krusen, Evans & Shaw, Philadelphia, Pa. (Leslie C. Krusen and Thomas E. Byrne, Jr., Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

Three questions are presented in the instant appeal: (1) did the District Court err in its fact finding and conclusions of law with respect to the liabilities of the parties to the litigation; (2) can respective liabilities of respondents with adverse interests be adjudicated in an admiralty action in the absence of a cross-claim or cross-libel setting up the issue of such cross-liabilities; and (3) did the specific averments in the answer to the libel filed by the complaining respondents constitute a "cross-claim" or "cross-libel" within the requirements of applicable pleading principles in admiralty.

The facts are set forth in detail in the opinion of the District Court E.D.Pa.1952, 109 F.Supp. 953. They may be summarized as follows:

Patterson Oil Terminals, Inc. owned a mooring dolphin adjacent to its dock in the Delaware River at Billingsport, New Jersey. The dolphin was struck and damaged by the S. S. "Creighton Victory", operated under bareboat charter by the Black Diamond Steamship Corporation ("Black Diamond"). The collision occurred on February 14, 1948, while the "Creighton Victory" was being docked under her own power with the assistance of the tugs "Port Covington" and "Girard Point", owned and operated by the Curtis Bay Towing Company of Pennsylvania ("Curtis Bay").

At the time of the collision the captain of the "Creighton Victory" was present on its bridge as was the captain of the tug "Girard Point", who was acting in the capacity of docking pilot. The weather was clear but windy with heavy gusts of 40 miles per hour force. When the "Creighton Victory" was about 150 feet from the

dock a sudden gust of wind sent her into a sheer which those in control of the vessel could not break before she struck the dolphin.

The District Court found that the collision was not the result of inevitable accident; that when the "Creighton Victory" and the tugs hove anchors at the start of the berthing operation about 20 minutes before the accident, the wind was 24 miles per hour and as the vessels moved down the river the wind increased in force; that the accident could have been avoided if three tugs had been used instead of two and that before the "Creighton Victory" left her anchorage she or Curtis Bay "could have insisted upon an additional tug" instead of proceeding with but two tugs.

In consonance with these fact findings the District Court held that Black Diamond and Curtis Bay had not met the burden of rebutting the presumption of negligence which arises when a vessel comes into collision with a stationary object and accordingly both were liable to the owner of the dolphin for the damages it sustained. It may be noted that the District Court further held that the presumption aforementioned operates against all parties participating in the management of the vessel and in doing so stated that "During the maneuvering of the vessel (the 'Creighton Victory') in the effort to break the sheer, the captain was present on the bridge and if what the pilot did appeared to be insufficient or wrong he could have corrected or countermanded the pilot's orders."

In making its determination as to liability, the District Court declined to consider the effect of the provisions of a "pilotage clause" in a towing contract between Curtis Bay and Black Diamond which Curtis Bay contended made its docking pilot the servant of Black Diamond and accordingly relieved it of any liability to the owner of the damaged dolphin, or in the alternative entitled it to an indemnity judgment against Black Diamond. In doing so the District Court said, 109 F. Supp. at page 955:

"The pilotage clause by which the docking pilot became the servant of the vessel and her owners does not affect the tort liability of the parties to the libellant, whatever its effect may be as between the two parties to the contract."

Following the filing of the District Court's opinion, Curtis Bay, acting on its theory that it had sufficiently cross-claimed or cross-libelled in its answer to the libel (as subsequently set forth) filed a petition for review requesting additional findings of fact and conclusions of law and determination of the respective liabilities of Black Diamond and Curtis Bay to the owner of the damaged dolphin under the pilotage clause, and/or an adjudication of indemnity against Black Diamond.

The District Court in an "Opinion Sur Petition for Review and For Additional Findings" [1] denied the petition on the ground that "In the absence of a cross-libel, the findings requested by the petitioner would have no effect upon the decree [2] nor would they necessarily obviate further litigation."

---

1. The Opinion Sur Petition for Review is unreported. It reads as follows:

"The petition does not ask for a decree determining liability as between Curtis Bay Towing Company and Black Diamond Steamship Corporation nor, under the pleadings, would the Court have power to enter such a decree. The petition states that it is filed for the limited purpose of obtaining a specific finding of fact as to the negligence of the respective respondents, specifically as to its exact nature and the point of its occurrence in time and place, this in order to determine the effect of the Pilotage Clause as between the two respondents. The opinion contains all fact findings and conclusions of law necessary to establish the liability of the two respondents to the libellant and the Court does not believe that any useful purpose would be accomplished by making further findings. In the absence of a cross libel, the findings requested by the petitioner would have no effect upon the decree nor would they necessarily obviate further litigation.

"The prayer of the petition is denied."

2. The decree referred to was in consonance with the District Court's opinion holding both Black Diamond and Curtis Bay liable to the owner of the damaged

Pursuant to this opinion the District Court entered a "Final Decree in re Determination of Liability Between Respondents" denying the petition for review. This appeal is from that decree and it raises the questions earlier stated.

With respect to the contention that the District Court erred in its determination that Black Diamond and Curtis Bay were negligent, we are of the opinion that the finding of negligence was amply supported by the evidence and must therefore be affirmed.[3]

As to the second question presented: can respective liabilities of respondents with adverse interests be adjudicated in an admiralty action in the absence of a cross-claim or cross-libel setting up the issue of such cross-liabilities. On that score it is well settled that the only manner in which affirmative rights may be asserted against a party in admiralty is by cross-claim or cross-libel or by an independent suit. Ward v. Chamberlain, 1859, 21 How. 572, 62 U.S. 572, 16 L.Ed. 219; The Dove, 1876, 91 U.S. 381, 23 L.Ed. 354; Bowker v. United States, 1902, 186 U.S. 135, 22 S.Ct. 802, 46 L.Ed. 1090; Mayer & Lage, Inc., v. Prince Line, Limited, D.C.S.D.N.Y.1920, 264 F. 854; Cioffi v. New Zealand Shipping Co., D.C.S.D.N.Y.1947, 73 F.Supp. 1015, 1016.

As to the third question presented: did the specific averments in the answer to the libel filed by the complaining respondents constitute a "cross-claim" or "cross-libel" within the requirements of applicable pleading principles in admiralty. With respect to this phase of the case Curtis Bay vigorously urges that the averments in Paragraph 13 of its answer to the libel sufficiently constituted a "cross-claim" or a "cross-libel" against Black Diamond and that the District Court erred in concluding otherwise. It becomes necessary, accordingly, to consider Paragraph 13 of the answer which reads as follows:

"13. As a further and separate defense, claimant-respondent avers that insofar as the aforesaid collision and loss may be determined to have resulted from the fault or negligence of the tug-master of Tug Girard Point who was on board the S. S. Creighton Victory in charge of the operation at all material times, claimant-respondent is entitled in respect to all sums adjudged against it to recover the same by way of indemnity from respondent United States of America[4] under the Pilotage Clause of the towage contract between the said parties, reading as follows:

" 'Whenever the Master or other officer of any tug or any licensed pilot goes on board a vessel to assist her movement or handling, he becomes and continues to be solely the servant of said vessel and her owners in respect of all acts done by him and all orders given by him to any tugs engaged or to said vessel or otherwise in the movement or handling of said vessel; and none of the tugs or their owners, agents or charterers shall be

---

dolphin and assessing damages of $5,000 against them. It was entered subsequent to the filing of the Petition for Review and before the latter's disposition.

3. The record discloses that when the "Creighton Victory" and the two tugs started their passage from Mantua Anchorage to the Patterson Terminal where the ship was to dock "* * * it was gusty, gusts up to about 30 knots." (Testimony of Captain Robert J. Bloxsom, Master of the "Creighton Victory"). Captain Baraldi of the tug "Girard Point" and docking pilot of the "Creighton Victory" testified that it "* * * seems to be a windy section of the country right down there, quite wide open."

Captain Bloxsom frankly admitted that the accident would have been avoided if an additional tug had been used. The "Creighton Victory" had but a small amount of cargo on board at the time and she "* * * was riding fairly high in the water and susceptible to wind." As the District Court stated: "There may be occasions when to take a calculated risk is good seamanship, but not in this case."

4. The United States as owner of the "Creighton Victory" was originally named as respondent in the libel but the latter and Curtis Bay's answer were subsequently amended substituting Black Diamond in place of the United States.

responsible or liable for any claims or any damages caused by or resulting from such acts or orders.'"

Analysis of Paragraph 13 discloses that it merely asserted a right to recovery by way of indemnity against the United States (Black Diamond) under the Pilotage Clause, in the event that the District Court found that there was negligence on the part of its tug-master while he was acting as docking pilot aboard the "Creighton Victory"; this on the ground that the Pilotage Clause provided that the tug-master while acting as docking pilot became "solely the servant" of the "Creighton Victory."

On this score it must be noted that the only relief asked for by Curtis Bay was the dismissal of the libel as to it and the tugs "Port Covington" and "Girard Point". It did not ask or pray for any judgment by way of indemnity against Black Diamond. It merely asserted its right to recover indemnity from Black Diamond.[5]

The averments in Paragraph 13 did not constitute a cross-libel. Mayer & Lage, Inc. v. Prince Line, Limited, supra;[6] The Edward H. Blake, 5 Cir., 1899, 92 F. 202[7]; Hawgood & Avery Transit Co. v. Dingman, 8 Cir., 1899, 94 F. 1011; see Consolidated New York Coal Corp. v. Howard, D.C.S.D. N.Y.1943, 52 F.Supp. 600. It was not in form a cross-libel; it was not attended with the requisite formalities of a cross-libel; there was no posting of security nor was it required that Black Diamond should give security to respond in damages to the claims set forth in the cross-libel.[8]

It is not a question of whether the answer gave Black Diamond notice or some indication that Curtis Bay intended to assert its rights under the Pilotage Clause. One is not required to defend upon receipt of mere notice; one need only defend when properly proceeded against according to legal process.

Curtis Bay contends that "Such refinement of pleading (the insistence upon a cross-libel) is foreign to general practice in admiralty. There can be no question of surprise on the part of Black Diamond * * * where the issue is raised in some clear and appropriate manner in the original pleading of * * * Curtis Bay * * * as was done in this proceeding."

That is an ingenious argument but we cannot subscribe to it. To do so would be to obliterate rules of pleading and practice long established and observed by admiralty practitioners.[9]

5. The prayer for recovery reads as follows:

"Wherefore, claimant-respondent respectfully shows your Honorable Court to dismiss the libel as to Tugs Port Covington and Girard Point, and as to this claimant-respondent, with its costs."

6. At page 855 of 264 F. the Court there said:

"Though the answer is called a cross-libel, it is not in form such, was accompanied by no citation, and can be treated only as a pleading containing allegations of a set-off. It cannot afford a basis for any affirmative relief."

7. At page 206 of 92 F. the Court there said:

"* * * it is * * * well settled that, if the respondent desires affirmative relief beyond defeating the libel, and a decree over against the libellant, he must, besides answering the case made by the libel, file a cross libel, by which we understand an independent proceeding with the formalities attendant upon an original libel."

8. There is no specific provision in the Admiralty Rules, Title 28 U.S.C. with respect to a cross-libel by one respondent against another. Rule 50 of the Admiralty Rules, however, requires the posting of security where a respondent cross-libels the libellant and the practice has been followed where one respondent cross-libels another respondent.

9. On first glance it would appear that Esso Standard Oil Co. v. United States, 2 Cir., 1949, 174 F.2d 182 supported Curtis Bay's contention that the requirement of specifically pleading a cross-libel in accordance with established principles need not always be observed. Parenthetically it may be observed that the case was not cited to the District Court nor to this court. In the Esso Standard case a respondent asserted in its answer that another respondent was solely responsible for the damage to the libellant and did not otherwise conform to the requirements of the pleading of a cross-libel. The District Court, Standard Oil Co. of New Jersey v. U. S., D.C.S.D.N.Y.1948, 82 F.Supp. 738, 739 held that such an

Accordingly, we are of the opinion that the District Court did not err in holding that the averments in the answer did not constitute a cross-libel and that in the absence of the latter "the findings requested by the petitioner (Curtis Bay) would have no effect upon the decree (adjudging Curtis Bay and Black Diamond liable) nor would they necessarily obviate further litigation." Publicker Industries, Inc. v. Tugboat Neptune Co., 3 Cir., 1948, 171 F.2d 48.

One final comment. On this appeal Curtis Bay evidenced concern lest the defense of res judicata could be asserted by Black Diamond against any suit which it might bring under the provisions of the Pilotage Clause in view of the District Court's disposition. In our view there is no basis for such a concern. The District Court specifically noted in its disposition that it was not adjudicating the respective rights of Curtis Bay and Black Diamond under the Pilotage Clause of the towage contract and we agree with it that it did not do so. In its "Opinion Sur Petition for Review and for Additional Findings" the District Court observed that the findings requested by Curtis Bay "would have no effect upon the decree *nor would they necessarily obviate further litigation."* (emphasis supplied).

In this statement the District Court made it quite clear that further litigation would inevitably be required to resolve the respective rights of Curtis Bay and Black Diamond under the Pilotage Clause, and at the risk of being repetitious we again express our agreement.

Curtis Bay has its remedy. It may bring an independent suit against Black Diamond in order to determine the effects of the Pilotage Clause upon their respective rights. The rule of res judicata provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Cromwell v. County of Sac, 1877, 94 U.S. 351, 352, 24 L.Ed. 195. But the rule applies only to repetitious suits involving the same cause of action, Commissioner v. Sunnen, 1948, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898, and is therefore not applicable here. As for the much narrower doctrine of collateral estoppel, it applies where the second cause of action is upon a different cause, and in this situation the prior judgment operates as an estoppel as to matters which were actually at issue, and upon the determination of which the verdict was rendered. Commissioner v. Sunnen, supra.

Since the District Court refused, and properly so, to adjudicate with reference to questions related to the operation of the Pilotage Clause, the doctrine of collateral estoppel cannot and will not operate to prejudice Curtis Bay in any subsequent litigation.

For the reasons stated, the Final Decree in re Determination of Liability Between Respondents of the District Court will be affirmed.

averment did not constitute a cross-libel, stating "It is established law that a claim for an affirmative recovery against a libellant, much less a claim against another party thought liable for libellant's damage, must be set up by a pleading." The Court of Appeals for the Second Circuit reversed and held the averment to constitute a cross-libel. It did so on the specific ground that the Statute of Limitations had run against any recovery by the asserting respondent against the second respondent and that equitable principles which prevail in admiralty accordingly required that the utmost liberality be exercised in the construction of the averment as a cross-libel. A significant circumstance, heavily stressed by the Court, was the fact that in its answer relief had been specially asked against the asserted cross-respondent. That factor was absent in the instant case. If it cannot be distinguished we can only say that we do not subscribe to it as being against the overwhelming weight of authority.