267 F.2d 547
 Charlotte F. JACOBUS, as owner of THE Scow SOUTH, Libelant-Appellee,
v.
THE Scow TRIBORO NO. 22, and Triboro Scow Corporation,
Respondent-Appellant.
PORT JEFFERSON CORPORATION, as owner of THE Scow PAUL J., Appellee,
v.
Charlotte F. JACOBUS and F. Jacobus Transportation Co.,
Inc., Appellants.
TRIBORO SCOW CORPORATION, as owner of THE Scow TRIBORO NO.
22, Appellee- Appellant,
v.
Charlotte F. JACOBUS and F. Jacobus Transportation Co.,
Inc., Appellants- Appellees.
 Nos. 240, 322, Dockets 25381, 25155.
 United States Court of Appeals Second Circuit.
 Argued April 10, 1959.
Decided June 12, 1959.
 
 Christopher E. Heckman, New York City (Foley & Martin, New York City, on the brief), for Charlotte F. Jacobus and F. Jacobus Transportation Co., Inc.
 Vincent A. Catoggio, New York City (Purdy, Lamb & Catoggio, New York City, on the brief), for Triboro Scow Corp. and Port Jefferson Corp.
 Before HINCKS, LUMBARD and WATERMAN, Circuit Judges.
 LUMBARD, Circuit Judge.
 
 
 1
 These appeals from interlocutory decrees following decisions of Judge Lawrence E. Walsh and Judge Thomas F. Murphy, after separate trials in the District Court for the Southern District of New York, are virtually cross-appeals and they arise out of the capsizing of the scows South and Triboro No. 22 in the early morning of May 30, 1955, and the consequent damage to those scows and the scow Paul J., all three being tied up alongside each other in the first tier of scows at the Whitestone Stakeboat, an old tug anchored in the East River off Silver Beach and Throggs Neck in the Bronx.
 
 
 2
 The first trial before Judge Walsh in June 1957 involved two separate libels, one filed by the Triboro Scow Corporation, owner of Triboro No. 22 against the respondents Charlotte F. Jacobus and F. Jacobus Transportation Co., Inc., the owner and agent respectively for the South, and the other filed by the Port Jefferson Corporation, owner of the Paul J. against the same respondents, both claiming damages caused by the South when she sank and overturned.
 
 
 3
 On Friday evening, May 27, 1955, some twenty or more scows, heavily laden with sand and gravel so that they had only two feet or less of freeboard, lay tied to the Whitestone Stakeboat, which was operated by the charterer of the scows, Gallagher Brothers Sand & Gravel Corporation. There were several tiers of scows, each tier containing five or six scows, all about 128 feet by 33 feet and 9 feet deep, the dimensions of the South. In the first tier, from left to right in back of the Stakeboat, were the Paul J., the South, and the Triboro No. 22. The Paul J. was second from the left end, the South was tied to the starboard side of the Paul J., and the Triboro No. 22 was tied to the starboard side of the South. There were two more scows to the starboard of Triboro No. 22. The scows were joined to the Stakeboat by cables 30 or 40 feet long, one of which ran to the South, and the scows were held close to each other by lines running to the scows alongside and to their stern so that one could walk from one scow to the other.
 
 
 4
 On Saturday, May 28 at 9 a.m. the captain of the South left and did not return before the Monday morning accident. Shortly after 5 a.m. on Monday morning, the captain of the Stakeboat observed the South to be in sinking condition. No one was aboard her. The Stakeboat captain summoned help from other scow captains and put a portable pump on the South and the South's lines were let go in the hope that she might drift away. The list continued, however, until the pump could no longer be worked, and shortly thereafter, at about 6 a.m., the South, which had not drifted away, overturned and came to rest upsiderdown on the deck of the Triboro No. 22. The damage to Triboro No. 22 and the weight of the South resting on her, caused Triboro No. 22 to fill with water and at about 8 a.m. Triboro No. 22 capsized to her left so that she rested upsidedown on top of the upsidedown South. The side rail of the South was pushed under the bottom of the scow Paul J., causing damage to the Paul J.
 
 
 5
 Judge Walsh Found South's owner and agent negligent because they should have known that she was in poor condition and they should not have left her unattended over a three day holiday weekend. He found the South was thirty years old and had been maintained poorly and in a niggardly fashion, that she had been subjected to a twist and had been repaired in a makeshift manner by means of wedges, that she had not been caulked for two years and had been used on a hard run. Under these circumstances the district judge concluded that it was negligent to leave her unattended over a three day holiday weekend while berthed in an open mooring and fully loaded.
 
 
 6
 Judge Walsh said that he did not know and could not say what caused the South to sink and capsize, but he did find that, regardless of the cause, it could have been discovered and the accident could have been prevented if someone had been aboard. These findings are not clearly erroneous; on the contrary they are amply supported by the evidence. Judge Walsh made no findings with respect to the condition of the Triboro No. 22 and we must take it that she was in good condition.
 
 
 7
 Judge Walsh awarded full recovery to the Paul J.'s owners against the owner and agent of the South. We affirm this award which is amply supported by the record and requires no further discussion.
 
 
 8
 Judge Walsh also awarded to Triboro No. 22's owner half of its damages against the South's owner and agent, on the ground that No. 22's owner was also at fault in leaving No. 22 unattended.
 
 
 9
 In December 1957 Charlotte F. Jacobus, the owner of South, filed a libel against the Triboro No. 22 and its owner for one-half the damages sustained by South when the Triboro No. 22 capsized and landed upsidedown on top of South. After overruling exceptions Judge Murphy tried the libel by taking under consideration the testimony and exhibits offered on the previous trial before Judge Walsh.
 
 
 10
 Judge Murphy, feeling that he was obliged to follow Judge Walsh's conclusion as to the joint negligence of Triboro No. 22, held Triboro No. 22 liable for one-helf of the damages to South and denied limitation of liability to No. 22's owner.
 
 
 11
 From the interlocutory decrees entered on the opinions of Judges Walsh and Murphy, the owners of the South and the Triboro No. 22 both appeal and cross-appeal. The only content party is Port Jefferson Corporation, owner of the Paul J. which was awarded damages against the South and its owner and agent without limitation of liability.
 
 
 12
 In our view it was clearly erroneous to hold that the owners of Triboro No. 22 were negligent. Apparently the sole basis for finding any fault with respect to Triboro No. 22 was stated as follows by Judge Walsh:
 
 
 13
 'The Triboro No. 22, of course, in no way caused or aggravated the accident. The only thing that it seems to me is that if she had had her own scow captain aboard she could have avoided her own injury; that there was time to get her clear, if there had been someone there to do it; that a man next to a vessel in trouble, as the South was, would have known about it early enough to get his own lines off and to somehow move his vessel or let if drift, or let the other vessel drift clear of her, even though I recognize that the Triboro 22 was in a difficult position in that flotilla. She was in the middle of it; she wasn't on the end.'
 
 
 14
 Whether or not the presence of someone aboard the Triboro No. 22 would have made any difference is very doubtful and speculative at best, as the Paul J. had her captain aboard and she was unable to avoid injury, but all of this is beside the point. The only question is whether there was any duty on the part of the Triboro No. 22 owner to have kept someone on board during the three day weekend. There was no evidence of any general practice in the industry to keep captains on board under the circumstances here disclosed. On the contrary, it was the custom to keep someone on board only if it was planned to move the scow during the weekend and it was only then that the captains were paid for staying aboard. On this particular weekend some of the scows were attended and some were not. Several of the scow captains left for the weekend when they learned that their vessels were not to be moved, while other captains stayed on for their own personal reasons or because they expected to be moved during the weekend. Even though no captain was aboard the Triboro No. 22 a representative of the owner, Triboro Scow Corporation, did visit the Triboro No. 22 and the Stakeboat on Saturday and again on Sunday observing nothing unusual on these occasions.
 
 
 15
 Judge Walsh found that Triboro No. 22 in no way caused or aggravated the accident. He did not make any finding that because of conditions obtaining at the Whitestone Stakeboat or with reference to the condition of Triboro No. 22 that there was any duty on the owners to keep someone on board Triboro No. 22 during the weekend. Judge Walsh's conclusion that if Triboro No. 22 had had her own scow captain aboard she could have avoided injury does not amount to any finding that she was under any duty to have someone on board. As we have said, there was no finding that No. 22's condition required such an extra precaution. Of course there was no duty on the part of No. 22's owners to have someone aboard simply in order to avert a possible accident which might arise because of the negligence of someone else. One who leaves an automobile properly parked but unattended is certainly not negligent if another automobile with defective brakes rolls downhill and smashes into it. Triboro No. 22's damages having been caused entirely by the negligence of South, the decree should have awarded full damages to Triboro No. 22.
 
 
 16
 The South's owner and agent further complain of Judge Walsh's refusal to limit their liability to the Paul J. and Triboro No. 22 Judge Walsh found, and the evidence amply supports the finding, that both the owner and the agent of the South were fully aware of the defective condition of the South and her poor maintenance. There was ample evidence that the owner's negligence in failing to have the South attended was a cause of the resulting damage to sustain the district judge's refusal to limit liability. While he did not find the precise cause of the sinking of the South, this course is not in conflict with his conclusion that had the South been properly attended her captain could have averted the resulting injury to others by the use of his own and additional pumps in a timely manner or by moving the barge. The fact that by the time the Stakeboat captain observed the South in sinking condition it was too late in the circumstances either to save or move her is no evidence whatever of that might have been accomplished had the leak been detected in a timely manner.
 
 
 17
 Accordingly we reverse the interlocutory decrees in both cases involving Triboro No. 22. In the libel brought by Triboro Scow Corporation against the owner and agent of the South, we reverse the interlocutory judgment and direct that full damages be awarded Triboro Scow Corporation against Charlotte F. Jacobus and F. Jacobus Transportation Co., Inc., without limitation of liability. We also reverse the interlocutory decree in the libel action brought by Charlotte F. Jacobus against the scow Triboro No. 22 and its owners the Triboro Scow Corporation and remand with directions to dismiss the libel.[1]
 
 
 18
 In the action brought by Port Jefferson Corporation against the owner and agent of the South we affirm the decree which awarded damages against South's owner and agent without limitation of liability.
 
 
 
 [1]
 It will be noted that it is possible under the admiralty practice for a party to bring a second case where there should be only one. As no cross-claim is required to be filed as to matters growing out of the May 30 events, Patterson Oil Terminals, Inc. v. The Port Covington, 3 Cir., 1953, 205 F.2d 694, a party may sit back and bring a separate suit later, 'a tardy and needless sequel' as Judge Murphy well called it. Cf. Rule 13(a), Federal Rules of Civil Procedure, 28 U.S.C.A